UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

―――――――――――――――――――――――――――――――――――――――――

VASCULAR SOLUTIONS LLC; TELEFLEX          Case No. 19-CV-1760 (PJS/TNL)
LLC; TELEFLEX LIFE SCIENCES
LIMITED; and ARROW INTERNATIONAL
LLC,

                    Plaintiffs,

                                                                    ORDER

v.

MEDTRONIC, INC. and MEDTRONIC
VASCULAR, INC.,

                    Defendants.

―――――――――――――――――――――――――――――――――――――――――

J. Thomas Vitt and Sanjiv P. Laud, MCCURDY LLC; J. Derek
Vandenburgh, Tara C. Norgard, Joseph W. Winkels, and Seung Sub Kim,
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.; Kenneth
E. Levitt, DORSEY & WHITNEY LLP, for plaintiffs.

Kurt J. Niederluecke, Laura L. Myers, Barbara Marchevsky, and Cara S.
Donels, FREDRIKSON & BYRON, P.A., for defendants.

Plaintiffs Vascular Solutions LLC, Teleflex LLC, Teleflex Life Sciences Limited,

and Arrow International LLC (collectively "Teleflex") brought this patent-infringement

action against defendants Medtronic, Inc. and Medtronic Vascular, Inc. (collectively

"Medtronic").  Teleflex claims that Medtronic's Telescope catheter infringes claims in a

family of patents that are directed to guide-extension catheters used in interventional-

cardiology procedures.[1]  Medtronic counterclaims for declarations of non-infringement and invalidity.

This matter is before the Court for construction of the term "substantially rigid portion/segment"[2] in accordance with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  For purposes of this phase of the case, *see* ECF Nos. 399, 406, Teleflex asserts claims 9, 13, 17, and 18 of U.S. Patent No. 8,408,032 ("'032 patent"); claim 27 of U.S. Patent No. RE45,380 ("'380 patent"); claims 25 and 52 of U.S. Patent No. RE45'776 ("'776 patent"); claim 4 of U.S. Patent No. 8,142,413 ("'413 patent"); claim 33 of U.S. Patent No. RE47,379 ("'379 patent"); and claim 46 of U.S. Patent No. RE46,116 ("'116 patent").  ECF No. 433 at 1.

## I.  STANDARD OF REVIEW

Claim construction is an issue of law for the court.  *Markman*, 517 U.S. at 391.  Disputed terms in a claim must be construed in the context of both that individual claim and "the entire patent, including the specification."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  The specification, read in light of the prosecution history, is the primary basis for construing patent claims.  *Id.* at 1315.  Courts may also

---

[1]The technology is described in a *Markman* order entered in another case involving the same family of patents.  *See QXMédical, LLC v. Vascular Sols., LLC*, No. 17-CV-1969 (PJS/TNL), 2018 WL 5617568 (D. Minn. Oct. 30, 2018).

[2]As there is no dispute that the patents use "portion" and "segment" interchangeably, any mention of one term in this order is meant to include the other.

-2-

rely on "extrinsic evidence"—anything other than the patent and its prosecution history—but that evidence is less important than the intrinsic record.  *Id.* at 1317.

In general, claim language means whatever it would have meant, ordinarily and customarily, to a person of ordinary skill in the relevant art at the time the patent application was filed.  *Id.* at 1312–13.  In some cases, the ordinary and customary meaning of claim language to a person of ordinary skill in the art may be identical to the meaning of that language to a lay person who is not skilled in the art.  *See id.* at 1314 (acknowledging that claim construction sometimes "involves little more than the application of the widely accepted meaning of commonly understood words").  Here, the parties agree that a person of ordinary skill in the relevant art would be one of the following: (1) a medical doctor who had completed a coronary intervention training program and had worked as an interventional cardiologist; or (2) a person with an undergraduate degree in engineering (such as mechanical or biomedical engineering) with three years' experience designing medical devices, including catheters or catheter-deployable devices.[3]  Keith Decl. ¶ 9 [ECF No. 445]; Zalesky Decl. ¶ 37 [ECF No. 452].

---

[3]The parties also agree that "[e]xtensive experience and technical training might substitute for education, and advanced degrees might substitute for experience."  Keith Decl. ¶ 9 [ECF No. 445]; Zalesky Decl. ¶ 37 [ECF No. 452].

## II.  CLAIM CONSTRUCTION

### A.  Previous Attempts to Construe "Substantially Rigid Portion"

As noted, Teleflex is a party to an earlier-filed case involving the same family of patents.  *See QXMédical, LLC v. Vascular Sols., LLC*, No. 17-CV-1969 (PJS/TNL), 2018 WL 5617568 (D. Minn. Oct. 30, 2018).  In *QXMédical*, the Court has never been asked to define "substantially rigid portion."  The Court was, however, asked to define "substantially rigid."  *Id.* at *4.  The Court adopted Teleflex's construction of the term, which was "rigid enough to allow the device to be advanced within the guide catheter." *Id.* at *5.  The Court noted that Teleflex's proposed definition, which defined a structural limitation in functional terms, "initially gave this Court pause."  *Id.* at *4.  But the Court ultimately found that Teleflex's construction was "amply supported by the record," which indicated both that the substantially rigid portion "must have a considerable degree of flexibility" and that it "must be rigid enough to push the tubular structure through the guide catheter and into the coronary artery."  *Id.* at *5.

The Court first addressed the meaning of "substantially rigid portion" when Teleflex brought its second motion for a preliminary injunction in this case.  Teleflex's first motion for a preliminary injunction largely concerned Medtronic's invalidity defenses, but the second motion turned on Teleflex's ability to show a likelihood of success on the issue of infringement.  *See Vascular Sols. LLC v. Medtronic, Inc.*, No.

-4-

19-CV-1760 (PJS/TNL), 2022 WL 832102, at *2 (D. Minn. Mar. 21, 2022).  That issue, in turn, depended on the construction of "substantially rigid portion."  *See id.* at *3.  Although the Court had not yet held a claim-construction hearing (and was therefore not prepared to make a final determination as to the meaning of the term), the Court found that Medtronic had made a strong showing that its construction was correct.

As noted, in *QXMédical*, the Court construed "substantially rigid" to mean "rigid enough to allow the device to be advanced within the guide catheter."  *QXMédical*, 2018 WL 5617568, at *5.  But when the Court was confronted in this case with the need to construe "substantially rigid *portion*," it became clear that the Court and the parties in *QXMédical* had simply assumed that the "substantially rigid portion" of the device was readily identifiable.  In particular, everyone assumed that the "substantially rigid portion" was the portion of the device known colloquially as the "pushrod," and everyone assumed that the pushrod was easy to identify.  *See Vascular Sols. LLC*, 2022 WL 832102, at *3–4 (recounting Teleflex's history of equating the "substantially rigid portion" with the pushrod).

The dispute in *QXMédical* was over whether the Court's construction rendered the claims indefinite because portions of the device that were *not* part of the pushrod could *also* meet the definition of "substantially rigid."  *See QXMédical*, 2018 WL 5617568, at *6 (*Markman* order discussing QXMédical's argument that "flexible" portions of the

device are also "rigid enough to allow the device to be advanced within the guide
catheter," but declining to resolve the issue without additional evidence).  At summary
judgment, QXMédical argued that the asserted claims were indefinite because both the
"substantially rigid" portion and the "flexible" portion were simultaneously
"substantially rigid" *and* "flexible."  *See QXMédical, LLC v. Vascular Sols., LLC*, 408 F.
Supp. 3d 996, 1004 (D. Minn. 2019).  The Court rejected this argument, reasoning that

> [n]othing in any of the patents in suit says that "substantially
> rigid" and "flexible" are mutually exclusive.  In other words,
> nothing in any of the patents says that a segment of the
> device cannot be *both* "substantially rigid" *and* "flexible."
> Instead, the claims that disclose a "flexible tip" portion
> simply require that the substantially-rigid pushrod be "*more*
> rigid" than the flexible tip.  This is a comparative
> limitation—a limitation that would be superfluous if
> "substantially rigid" and "flexible" were mutually exclusive
> categories. . . .
>
> There is, at bottom, no evidence in the record
> supporting QXMédical's argument that a person of ordinary
> skill would be unable to distinguish between the
> "substantially rigid" pushrod and the "flexible" distal tip.
> The experts on both sides agree that a person of ordinary
> skill would have no trouble determining whether a pushrod
> is "rigid enough to allow the device to be advanced within
> the guide catheter."  And the experts on both sides agree
> that a person of ordinary skill would have no difficulty
> determining whether a substantially rigid pushrod is "more
> rigid" than a flexible tip portion.

*Id.* (citations and footnote omitted).

As the Court noted in denying Teleflex's second motion for a preliminary

injunction in this case:

> The premise of [the summary-judgment ruling in
> *QXMédical*] is that a skilled artisan would understand the
> substantially rigid portion to be the pushrod.  This is
> necessary because the artisan must be able to distinguish
> between the substantially rigid portion and the flexible tip
> portion *before* measuring and comparing the relative
> flexibility of the two portions.  Otherwise, the artisan would
> not know which portions of the device to measure and
> compare.

*Vascular Sols. LLC*, 2022 WL 832102, at *4 (footnote omitted).  For that reason, when

faced with the need to define "substantially rigid portion" in the context of this case, the

Court found that Medtronic's proposed construction equating the substantially rigid

portion with the pushrod made a great deal of sense.

In addition, the Court was skeptical of Teleflex's proposed construction, under

which the substantially rigid portion would shrink or grow depending on the location

in which a given claim placed the side opening.  As the Court put it:

> Teleflex is contending that the *same* substantially rigid
> portion shrinks or grows as necessary to accommodate two
> mutually exclusive limitations—namely, the Group One
> limitation, which requires that the side opening *must* be
> located in the substantially rigid portion, and the Group
> Two limitation, which requires that the side opening *must
> not* be located in the substantially rigid portion. . . . The
> Court wonders how a skilled artisan could possibly be
> expected to understand the scope of a patent when the same

-7-

> device could simultaneously infringe two *mutually exclusive* claims within that patent.

*Id.* at \*6.  The Court therefore denied Teleflex's second preliminary-injunction motion.

This set the stage for the parties' *Markman* arguments.  Teleflex did not propose a separate construction for "substantially rigid portion," but instead proposed to give "substantially rigid" the same construction as in *QXMédical*: "rigid enough to allow the device to be advanced within the guide catheter."  ECF No. 441 at 13.[4]  Teleflex further proposed to construe "portion" to mean "longitudinal section," *id.* at 7, 10, thereby cutting off Medtronic's argument that its accused device does not infringe because the side opening overlaps with, but is not actually within, the portion of the device alleged to meet the "substantially rigid" limitation.  *See Vascular Sols. LLC*, 2022 WL 832102, at \*2 (discussing Medtronic's argument).

Although Teleflex's construction has some appeal—after all, the Court adopted Teleflex's construction of "substantially rigid" in the *QXMédical* case—it has one fatal flaw:  It fails to define where the substantially rigid portion *ends*.  As discussed above, the Court and the parties in *QXMédical* assumed that the substantially rigid portion had a readily identifiable endpoint—specifically, the distal end of the pushrod.  But in this case, Teleflex resists that interpretation.  As noted, in its second preliminary-injunction

---

[4]When citing a document by ECF number, the Court cites to the ECF-generated page numbers on the upper right corner of the document.

motion, Teleflex argued that the substantially rigid portion shrinks or grows depending on whether the claim at issue places the side opening within or outside of the substantially rigid portion. *See, e.g.*, ECF No. 441 at 17–18.  This argument not only makes no sense—as it could result in the same device *simultaneously* infringing *mutually exclusive* claims—but it is at odds with Teleflex's own construction of "substantially rigid."  ECF No. 463 at 13 ("[T]he problem I have with your briefing is you don't apply your own definition.").

If a portion of an accused device is "rigid enough to allow the device to be advanced within the guide catheter," then, under Teleflex's proposed construction, that portion of the device is the "substantially rigid portion."  But, according to Teleflex, a portion of a device that meets its definition of "substantially rigid portion" may not be the substantially rigid portion; rather, whether *a* substantially rigid portion is *the* substantially rigid portion depends on which claim the device is accused of infringing. It is a mystery how, under Teleflex's proposed construction, a skilled artisan could possibly know where the substantially rigid portion ends.  *Cf. Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) (rejecting plaintiffs' attempt to map its claims onto the accused product because, "[u]nder [plaintiffs'] view, there is no meaningful difference between the 'protrusion' and 'end plate,' since any object could

be arbitrarily partitioned into a portion labeled as an 'end plate' and a remaining 'protrusion'").

Medtronic, for its part, proposed to construe "substantially rigid portion" to mean the "portion/segment of the device acting as a pushrod." ECF No. 451 at 7. While the Court was initially attracted to the simplicity of Medtronic's proposal, it soon became clear that Medtronic's proposal introduces other problems. In particular, Medtronic struggled at oral argument to clarify what it means for a portion of a device to "act as a pushrod," since *every* portion of the device—except whatever portion makes up the far distal end of the device—"pushes" some other portion of the device through the catheter. The Court noted that, if it adopted Medtronic's proposed construction, the next dispute would be over how to define "pushrod." ECF No. 463 at 76–80.

## B. Expert Report

Unsatisfied with either parties' proposed construction of "substantially rigid portion," and unable to come up with a better one on its own, the Court informed the parties that it intended to appoint an expert to either (1) propose a construction or (2) find the term indefinite and explain the basis for that conclusion. ECF No. 463 at 163–67; *see also* ECF No. 469. The parties conferred and agreed to the appointment of Andrei Iancu, a former director of the United States Patent and Trademark Office. ECF No. 468. Accordingly, the Court appointed Iancu, who produced a written report

(1) proposing a construction of "substantially rigid portion/segment" and (2) explaining why he believes that the term is not indefinite.  *See generally* Expert Report ("ER") [ECF No. 479].  The Court invited the parties to respond to the expert report and held another hearing.

In his report, the expert rejected both parties' proposed constructions, essentially for the reasons that the Court had rejected them.  ER at 1, 26–36.  In particular, the expert explained that Teleflex's proposed constructions[5] would result in an accused product simultaneously infringing mutually exclusive claims, which could "render the claims indefinite for failing to inform a skilled artisan as to the scope of the claims."  *Id.* at 28; *see also id.* at 27–29, 38–39.

As for Medtronic's proposed construction, the expert opined that it is not clear what it means to "act as a pushrod" and that the term "pushrod" itself would likely need to be defined.  *Id.* at 29–31.  The expert also pointed out that Medtronic's construction is inconsistent with various aspects of the specification.  In particular, it is inconsistent with embodiments that include other elements in the substantially rigid portion in addition to the wire (the portion colloquially referred to as the "pushrod").  It is also inconsistent with the description of the invention, which suggests that the

---

[5]In a brief submitted to the expert, Teleflex proposed two separate constructions for "substantially rigid portion": one for claims in which the side opening is in the substantially rigid portion and another for claims in which the side opening is outside of the substantially rigid portion.  ER at 19–20.

reinforced portion and the substantially rigid portion abut each other rather than overlap. *Id.* at 31–35.

Having rejected the parties' proposed constructions, the expert proposed the following construction of "substantially rigid portion":

> the first proximal section of a multi-section guide extension catheter, that ends where there is a material drop in the overall rigidity of the guide extension catheter at or distally to the proximal end of the coaxial lumen where an interventional cardiology device is inserted.

ER at 1, 40.

The Court invited the parties to respond to the expert's construction. Teleflex urges the Court to adopt it, ECF No. 499, and Medtronic argues that this construction, like the others, is fatally flawed and that the term "substantially rigid portion" is indefinite, ECF No. 487.

## C. Analysis

Having carefully reviewed the expert's report, the Court agrees with, and adopts, his analysis concerning the problems with the parties' proposed constructions. The Court also agrees with, and adopts, the expert's conclusion that "substantially rigid portion" should be construed as a single term and have the same construction across all claims.

The Court likewise believes that the expert has made the best possible argument for adopting his construction and, if a construction of the term were possible, the Court would likely adopt the expert's.  But the Court cannot adopt the expert's proposed construction because it would render nonsensical multiple claims in the patents, and thus it would "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

As the parties agree, the expert's construction requires that the side opening be *in* the substantially rigid portion.  ECF No. 487 at 9; ECF No. 499 at 9.  As discussed above, however, many claims in the patents—including some of the claims asserted by Teleflex in this lawsuit—explicitly require that the side opening be *outside* of the substantially rigid portion.  *See, e.g.*, '776 patent, claims 25, 52; '380 patent, claim 27.

As a general rule, a term must be construed consistently with the plain language of the claims.  *See Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1346 n.4 (Fed. Cir. 2020) ("We note that when a construction such as this is inconsistent with the plain language of the claims and the written description, it is incorrect."); *see also Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022) ("Mersen's construction would not merely render the dependent claims superfluous, but would mean that those claims would have no scope at all, a result that should be avoided when possible."); *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1378 (Fed. Cir. 2018) (a construction

that "would render these dependent claims meaningless" is "disfavored" (citation

omitted)); *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1255 (Fed. Cir.

2010) ("A claim construction that renders asserted claims facially nonsensical cannot be

correct." (citation omitted)); *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358,

1362 (Fed. Cir. 2008) ("this court strives to reach a claim construction that does not

render claim language in dependent claims meaningless"); *Schoenhaus v. Genesco, Inc.*,

440 F.3d 1354, 1357 (Fed. Cir. 2006) (explaining that "plaintiffs' proposed construction

cannot be correct" because it "renders claim 2 nonsensical"); *Rambus Inc. v. Infineon

Techs. Ag*, 318 F.3d 1081, 1093 (Fed. Cir. 2003) ("The district court's construction would

render claim language in dependent claims 27 and 28 meaningless.  This court disfavors

such a construction.").

Teleflex cites a number of cases in which, despite this general rule, the Federal

Circuit nevertheless adopted or approved a claim construction that was at odds with

language in certain dependent claims.  *See Cave Consulting Grp., LLC v. OptumInsight,

Inc.*, 725 F. App'x 988, 993–95 (Fed. Cir. 2018) (district court erred in adopting

construction that included direct standardization notwithstanding dependent claims

that expressly claimed direct standardization); *Multilayer Stretch Cling Film Holdings,

Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360–62 (Fed. Cir. 2016) (affirming construction

that rendered a dependent claim invalid and explaining that "the language of a

dependent claim cannot change the scope of an independent claim whose meaning is clear on its face"); *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1156 (Fed. Cir. 2015) ("The district court found that dependent claims 67, 68, and 70 of the '767 patent involved direct detection and therefore independent claim 1 must not be limited to indirect detection.  However, dependent claims cannot broaden an independent claim from which they depend." (citation omitted)); *Albecker v. Contour Prods., Inc.*, 578 F. App'x 969, 970–72 (Fed. Cir. 2014) (per curiam) (rejecting patentee's argument that the "integral and continuous" cushion in a dependent claim meant that the independent claim had to be broad enough to include such a cushion); *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) ("the correct construction of 'heterogeneous mixture' is one that excludes repetitive sequences, notwithstanding the presence of certain dependent claims that do not exclude them").[6]

---

[6]Teleflex also cites *North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571 (Fed. Cir. 1993).  In *North American Vaccine*, the plaintiffs argued that "inclusion of the words *Haemophilus influenza* in the dependent claims and specification prove that difunctional molecules are within the scope of [independent] claim 11 because such organisms lead to difunctional products according to this invention."  *Id.* at 1577.  The Federal Circuit explained, however, that there was evidence at trial "that the *H. flu* polysaccharide could be treated to create only a single aldehyde that would result in monofunctionality," and that therefore "use of the words *Haemophilus Influenza* in [dependent] claims 12 and 25 is not inconsistent with a monofunctional interpretation of [independent] claim 11."  *Id.*; *see also id.* at 1579–80 (reversing district court's finding that dependent claims were indefinite because a skilled artisan would understand that the references to polysaccharides in the dependent claims refer only to serotypes that do not result in polyfunctional molecules).

The Federal Circuit recently summarized this line of cases by observing that "[t]his court has adopted a construction rendering dependent claims meaningless when that construction was supported by either the specification or the prosecution history." *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 2021-2319, 2023 WL 4230371, at *6 (Fed. Cir. June 28, 2023) (citing, among other cases, *Dakocytomation*, *Enzo*, and *Multilayer Stretch*). In this case, however, the expert's construction does not merely render *dependent* claims meaningless; it would also render multiple *independent* claims meaningless. Indeed, for most if not all of the asserted dependent claims, the language that contradicts the expert's proposed construction appears in the associated independent claim, not in the asserted dependent claim.

Teleflex might argue that this is a distinction without a difference, but *Tubular Rollers* suggests otherwise, highlighting the nature of the issue by noting that the contrary cases upon which the patentee relied "underline the importance of not resting a construction solely on the independent-dependent claim structure." *Id.*; *see also N. Am. Vaccine*, 7 F.3d at 1577 ("The dependent claim tail cannot wag the independent claim dog."). In other words, these cases concern the thorny issue of the extent to which language in a dependent claim should inform the construction of language in the independent claim from which it depends. That is not the issue here, and these cases are therefore of limited application.

-16-

Setting that aside, this case does not involve the kind of robust intrinsic evidence on which the Federal Circuit has relied in approving claim constructions that directly contradict clear claim language.[7] *Cf. Cave Consulting*, 725 F. App'x at 995 (holding that language in dependent claim was insufficient to overcome specification language that "affirmatively limit[ed]" the invention by specifically criticizing and distinguishing the disputed limitation as used in prior art); *Multilayer Stretch*, 831 F.3d at 1358 (relying on "very strong presumption" created by the phrase "consisting of," which is "a term of art in patent law with a distinct and well-established meaning" that is "at least a century old and has been reaffirmed many times by our court and other courts"); *Enzo*, 780 F.3d at 1154–1157 (relying on independent claim's "plain meaning" as well as specification, which "clearly indicates that the purpose of this invention was directed towards indirect detection, not direct detection," to adopt a construction that excluded direct detection); *Albecker*, 578 F. App'x at 972 ("[W]e hold that the presence of [dependent] claim 11 is insufficient to overcome the strong evidence in the claims, specification, prosecution history, and reexamination record that the district court's construction is correct."); *Dakocytomation*, 517 F.3d at 1372–73 (finding that the "prosecution history in

---

[7]Teleflex also cites the fact that the claims placing the side opening outside of the substantially rigid portion were not part of the original application.  While the Federal Circuit has cited this as a factor in (apparently) giving such claims less weight in claim construction, it has also said that this factor is "generally not dispositive."  *Cave Consulting*, 725 F. App'x at 995.

the present case sheds decisive light on the scope of the disputed claim term" because "the patentees disclaimed embodiments that include repetitive sequences during the prosecution of the '479 patent").

The Federal Circuit has repeatedly cautioned against importing limitations from the specification into the claims. *See, e.g.*, *Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1377 (Fed. Cir. 2022) ("It is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." (cleaned up)). The specification in this case does not include a clear indication that the side opening must always be in the substantially rigid portion (as the expert's proposed construction would require). To the contrary, the specification states that "[t]he rigid portion *may* include a cutout portion." '032 patent, col. 3 ll. 49–50 (emphasis added); *cf. Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) (citing examples of the type of specification language that may indicate an intent to limit the claims). Even *Tubular*, which at first glance seems to bless a construction that renders a dependent claim meaningless so long as the construction is merely "supported" by the specification or prosecution history, involved construing a term whose plain and ordinary meaning dictated that result. *Tubular Rollers*, 2023 WL 4230371, at *4–7 (holding that "parallel" could not include "collinear" despite

-18-

"collinear" claims depending from "parallel" claims); *see also N. Am. Vaccine*, 7 F.3d

at 1577 (explaining that there was evidence showing that the dependent claims were

actually consistent with the construction of the independent claim, and further noting

that the contrary interpretation would require that the independent claim "include

polyfunctional molecules, which are *concededly* not within the scope of the invention"

(emphasis added)).

   "There is a fine line between construing the claims in light of the specification

and improperly importing a limitation from the specification into the claims."

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

Given the clear language of multiple claims (both independent and dependent) placing

the side opening *outside* of the substantially rigid portion and the lack of any clear

indication that the invention is limited to catheters with side openings *within* the

substantially rigid portion, the Court believes that adopting the expert's construction

would fall on the improper side of that line.

   At this point, the Court is out of options.  It agrees with the expert that the

parties' various proposed constructions are fatally flawed.  And although the Court

appreciates the expert's attempt to propose a construction of his own, the Court

ultimately concludes that the expert's construction "cannot be correct" because it

"renders asserted claims"—both independent and dependent—"facially nonsensical."

*Becton, Dickinson & Co.*, 616 F.3d at 1255.  The Court, the expert, teams of experienced patent litigators, and the parties have now devoted hundreds of hours to trying to come up with a viable construction of "substantially rigid portion."  All have failed.  There is no reason to believe that a skilled artisan will succeed where this Court, the expert, the attorneys, and the parties have failed.

The Court therefore concludes that no viable construction of "substantially rigid portion" is possible and that, as a result, the claims in which that term appears are invalid for indefiniteness.  *See Nautilus, Inc.*, 572 U.S. at 901 ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein:

1.   The Court finds that no viable construction of "substantially rigid portion" is possible and that the claims in which that term appears are invalid for indefiniteness.

2.   The Court will schedule a status conference to determine what, if any, issues are left for the Court to resolve in light of its holding.

Dated:  January 9, 2024                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz, Chief Judge
                                            United States District Court