# United States Court of Appeals for the Federal Circuit

---

**VASCULAR SOLUTIONS LLC, TELEFLEX LLC, ARROW INTERNATIONAL LLC, TELEFLEX LIFE SCIENCES LLC,**
*Plaintiffs-Appellants*

v.

**MEDTRONIC, INC., MEDTRONIC VASCULAR, INC.,**
*Defendants-Appellees*

---

2024-1398

---

Appeal from the United States District Court for the District of Minnesota in No. 0:19-cv-01760-PJS-TNL, Judge Patrick J. Schiltz.

---

Decided: September 16, 2024

---

WILLIAM M. JAY, Goodwin Procter LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by GABRIEL FERRANTE, New York, NY; SEUNG SUB KIM, TARA CATHERINE NORGARD, J. DEREK VANDENBURGH, JOSEPH W. WINKELS, Carlson, Caspers, Vandenburgh & Lindquist, P.A., Minneapolis, MN; SANJIV P. LAUD, JOHN THOMAS VITT, McCurdy Laud, LLC, Minneapolis, MN.

BRITTANY BLUEITT AMADI, Wilmer Cutler Pickering

Hale and Dorr LLP, Washington, DC, argued for defendants-appellees. Also represented by DAVID P. YIN; MARK CHRISTOPHER FLEMING, Boston, MA; CARA S. DONELS, Fredrikson & Byron, P.A., Des Moines, IA; BARBARA MARCHEVSKY, LAURA LYNN MYERS, KURT JOHN NIEDERLUECKE, Minneapolis, MN.

---

Before MOORE, *Chief Judge*, PROST, *Circuit Judge*, and MAZZANT, *District Judge*.[1]

MAZZANT, *District Judge*.

Vascular Solutions LLC, Teleflex LLC, Arrow International LLC, and Teleflex Life Sciences LLC (collectively, Teleflex) filed a patent infringement suit against Medtronic, Inc. and Medtronic Vascular, Inc. (collectively, Medtronic) in the United States District Court for the District of Minnesota, asserting forty claims across seven patents: U.S. Patent No. 8,048,032 (the '032 patent); U.S. Patent No. 8,142,413 (the '413 patent); U.S. Patent No. RE45,380 (the '380 patent); U.S. Patent No. RE45,760 (the '760 patent); U.S. Patent No. RE45,776 (the '776 patent); U.S. Patent No. RE46,116 (the '116 patent); and U.S. Patent No. RE47,379 (the '379 patent). After conducting claim construction proceedings over ten of the asserted claims, the district court concluded the claim limitation "substantially rigid portion/segment" was indefinite and invalidated all asserted claims. *Vascular Sols. LLC v. Medtronic, Inc.*, No. 19-CV-1760 (PJS/TNL), 2024 WL 95193 (D. Minn. Jan. 9, 2024). The parties stipulated to final judgment based on that determination. J.A. 22–23. Teleflex appeals. We

---

[1]     Honorable Amos L. Mazzant, III, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

vacate the final judgment and remand for further proceedings.

BACKGROUND

I

The seven asserted patents in this litigation all descend from a common application[2] filed on May 3, 2006. They are directed to a "coaxial guide catheter that is deliverable through standard guide catheters by utilizing a guidewire rail segment to permit delivery without blocking use of the guide catheter." '032 patent at 2:53–56.[3] As we have previously noted,

> [i]n a preferred embodiment, the disclosed extension catheter includes three parts: (1) a proximal[4] substantially rigid portion 20 (yellow); (2) a reinforced portion 18 (blue); and (3) a distal flexible tip 16 (pink). *See* ['032 patent] at 6:31–7:15, *see also id.* at Fig. 4 (reproduced below as annotated by Medtronic's expert). The proximal end of the guide extension catheter includes a "side opening," i.e., a partially cylindrical region (red circle), which permits the extension catheter to receive and deliver interventional cardiological devices while it is within the guide catheter. *Id.* at 10:1–20. As depicted in Figure 4, the side opening may include multiple inclined regions separated by a non-

---

[2]    U.S. Patent App. 11/416,629 (the '629 application).

[3]    The patents-in-suit share a common specification. For simplicity, all citations to the written description will refer to the '032 patent.

[4]    The term "distal" means the end of the catheter farther from the physician (closer to the heart), and the term "proximal" means closer to the physician (farther from the heart).

inclined region, a structure referred to herein as a double-inclined side opening. The patents-in-suit also disclose and claim embodiments in which the diameter of the extension catheter is no more than one French smaller than the diameter of the guide catheter, thereby preserving maximal volume within the coaxial lumen for receiving interventional devices. *See id.* at 3:28–49.



*Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 69 F.4th 1341, 1344–45 (Fed. Cir. 2023).

The asserted claims differ as to how they disclose the side opening.[5] Some claims *include* the side opening as part of the substantially rigid portion/segment (*see, e.g.*, '032 patent claim 13), while other claims recite the side opening as separate and distal to the substantially rigid portion/segment (*see, e.g.*, '776 patent claim 25). The representative claims below demonstrate this difference.

Claims 11, 13, and 18 of the '032 patent recite:

---

[5]    The patents-in-suit use different phrases to describe the side opening, such as "partially cylindrical" and "a cross-sectional shape having a full circumference portion, a hemicylindrical portion and an arcuate portion." *See* '032 patent at 12:13 (using "partially cylindrical"), '032 patent at 12:41–42 (using "a cross-sectional shape having a full circumference portion, a hemicylindrical portion and an arcuate portion").

[11] A device for use with a standard guide catheter, the standard guide catheter having a continuous lumen extending for a predefined length from a proximal end at a hemostatic valve to a distal end adapted to be placed in a branch artery, the continuous lumen of the guide catheter having a circular cross-section and a cross-sectional inner diameter sized such that interventional cardiology devices are insertable into and through the lumen to the branch artery, the device comprising:

an elongate structure having an overall length that is longer than the predefined length of the continuous lumen of the guide catheter, the elongate structure including:

a flexible tip portion defining a tubular structure having a circular cross-section that is smaller than the circular cross-section of the continuous lumen of the guide catheter and a length that is shorter than the predefined length of the continuous lumen of the guide catheter, the flexible tip portion being sized having a cross-sectional outer diameter sized to be insertable through the cross-sectional inner diameter of the continuous lumen of the guide catheter and defining a coaxial lumen having a cross-sectional inner diameter through which interventional cardiology devices are insertable;

a reinforced portion proximal to the flexible tip portion; and

*a substantially rigid portion* proximal of and connected to, and more rigid along a longitudinal axis than, the flexible tip portion and defining a rail structure without a lumen and having a maximal cross-sectional dimension at a proximal portion that is smaller than the cross-sectional outer diameter of the flexible tip portion,

VASCULAR SOLUTIONS LLC v. MEDTRONIC, INC.

such that when at least a distal portion of the flexible tip portion is extended distally of the distal end of the guide catheter with at least proximal portion of the reinforced portion remaining within the continuous lumen of the guide catheter, at least a portion of the proximal portion of the substantially rigid portion extends proximally through the hemostatic valve in common with interventional cardiology devices that are insertable into the guide catheter.

[13] The device of claim 11 *wherein the substantially rigid portion further includes a partially cylindrical portion* defining an opening extending for a distance along a side thereof defined transverse to a longitudinal axis that is adapted to receive an interventional cardiology device passed through continuous lumen of the guide catheter and into the coaxial lumen while the device is inserted into the continuous lumen, the opening extending substantially along at least a portion of a length of the substantially rigid portion.

[18] The device of claim 11 *wherein the substantially rigid portion includes, starting at a from distal to proximal direction, a cross-sectional shape having a full circumference portion, a hemicylindrical portion and an arcuate portion.*

'032 patent at 11:28–12:4, 12:12–20, 12:39–42 (emphasis added).

In contrast, claim 25 of the '776 patent recites:

[25] A guide extension catheter for use with a guide catheter, comprising:

*a substantially rigid segment*;

a tubular structure defining a lumen and positioned distal to the substantially rigid segment; and

*a segment defining a partially cylindrical opening positioned between a distal end of the substantially rigid segment* and a proximal end of the tubular structure, the segment defining the partially cylindrical opening having an angled proximal end, formed from a material more rigid than a material or material combination forming the tubular structure, and configured to receive one or more interventional cardiology devices therethrough when positioned within the guide catheter,

wherein a cross-section of the guide extension catheter at the proximal end of the tubular structure defines a single lumen.

'776 patent at 13:36–52 (emphasis added).

## II

In 2017, QXMédical, LLC (QXMédical) filed a declaratory judgment action of non-infringement against Teleflex in the District of Minnesota. D. Minn, No. 0:17-cv-01969-PJS-TNL, Dkt. #1. Teleflex counterclaimed for patent infringement. D. Minn, No. 0:17-cv-01969-PJS-TNL, Dkt. #13. The parties reached claim construction, and both parties asked the district court to construe the term "substantially rigid." J.A. 19254. There, the district court adopted Teleflex's "functional definition of 'substantially rigid': 'rigid enough to allow the device . . . to be advanced within the guide catheter.'" J.A. 19254 (*QXMédical* Construction). The district court also made the following findings about the "substantially rigid portion": (1) "the substantially rigid portion must have a considerable degree of flexibility," and (2) "the substantially rigid portion must be rigid enough to

push the tubular structure through the guide catheter and into the coronary artery." J.A. 19257–58.

### III

In July 2019, Teleflex sued Medtronic for patent infringement, asserting that Medtronic's guide-extension-catheter Telescope product infringes the claims of several Teleflex patents. Teleflex proceeded to seek a preliminary injunction based on the Telescope's alleged infringement of the '380, '776, '379, and '760 patents. J.A. 661–62. In its request for preliminary injunctive relief, Teleflex applied the *QXMédical* Construction of "substantially rigid": "rigid enough to allow the device . . . to be advanced within the guide catheter." J.A. 731 (declaration of Teleflex's expert, applying "the construction of claim terms agreed to by the parties and/or adopted by the court in the [QXMédical case]"). Medtronic filed multiple inter partes review (IPR) petitions, and it simultaneously argued to the district court that the asserted claims were invalid as anticipated in view of prior art, in particular the Itou[6] reference. The district court denied Teleflex's request for a preliminary injunction, finding Medtronic had raised substantial questions of invalidity regarding written description and anticipation based on Itou. The district court also stayed the case pending the results of Medtronic's IPRs.

The Patent Trial and Appeal Board (the Board) instituted fifteen IPRs. The Board determined some claims unpatentable, but it determined that Medtronic failed to show the unpatentability of all currently asserted claims. Appellants' Opening Br. 23–24. The Board concluded that Itou was not a prior art reference since Teleflex had conceived and reduced to practice its invention first. And the Board also found that the substitute claims had sufficient written

---

[6]    U.S. Patent No. 7,736,366.

description support. To date, the Federal Circuit has affirmed all fifteen of the Board's decisions in five consolidated appeals.[7]

After receiving final written decisions from the Board, Teleflex received permission and proceeded to file a second preliminary injunction request at the district court. At that point, Medtronic advocated that the district court construe the term "substantially rigid portion" as the portion of a device "act[ing] like a pushrod." J.A. 21887–88.

Teleflex mapped its various claims onto Medtronic's Telescope guide extension catheter. For claims reciting the side opening as *part* of a substantially rigid portion, Teleflex identified the portion of the Telescope "that includes the pushwire, spade marker and the rigid [] polymer" as a "substantially rigid portion that includes a side opening." J.A. 20076. For claims reciting a *separate* side opening portion distal to a substantially rigid portion, Teleflex identified the substantially rigid portion as stopping at the side opening. *See* J.A. 20078–79. At this second preliminary injunction stage, Medtronic and the district court both "grouped" the asserted limitations into "Group One" and "Group Two." Group One limitations required that the side opening be in the substantially rigid portion, and Group Two limitations required that the side opening not be in the substantially rigid portion. In its reply brief in support

---

[7]    *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298 (Fed. Cir. 2023) (*Medtronic I*); *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 69 F.4th 1341 (Fed. Cir. 2023) (*Medtronic II*); *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 70 F.4th 1331 (Fed. Cir. 2023) (*Medtronic III*); *Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, 86 F.4th 902 (Fed. Cir. 2023) (*Medtronic IV*); *Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, No. 2022-1605, 2022-1606, 2024 WL 1208642 (Fed. Cir. Mar. 21, 2024) (*Medtronic V*).

of its second preliminary injunction request, Teleflex demarcated the substantially rigid portion based on the groups identified by the district court.



J.A. 20079 (annotations added by Teleflex).

The district court denied Teleflex's second preliminary injunction request, finding Medtronic had "offered a strong argument . . . that 'substantially rigid portion' should be construed to mean only that portion of the device that acts as a pushrod." J.A. 21898. The district court criticized Teleflex's infringement positions and wondered "how a skilled artisan could possibly be expected to understand the scope of a patent when the same device could simultaneously infringe two *mutually exclusive* claims within that patent." J.A. 21898 (emphasis original).

In other words, the district court questioned the soundness of construing the claims in a way that would allow Teleflex to successfully assert Group One and Group Two claims against the same accused product. J.A. 21897–99 (explaining that "Teleflex is contending that the *same* substantially rigid portion shrinks or grows as necessary to accommodate two mutually exclusive limitations") (emphasis in original). After the denial of the second preliminary injunction request, the district court proceeded to claim construction. Teleflex argued that "substantially rigid" should be given the *QXMédical* Construction and that "portion" or "segment" should be construed as a "longitudinal section." J.A. 22014, 22008. Medtronic argued that "substantially rigid portion/segment" should be construed as

"portion/section of the device acting as a pushrod." J.A. 23209. The district court rejected both constructions. The district court made clear its finding that "there is only one substantially rigid portion." J.A. 27090. The district court also explained Figure 4 does not illustrate all embodiments, just the embodiments encompassed in the Group One claims:

> And Figure 4 doesn't illustrate all embodiments. Figure 4 is an illustration of the [G]roup [O]ne claims. Figure 4 is an illustration of what it looks like when the side opening is in the substantially rigid portion. It doesn't illustrate, it doesn't attempt to illustrate . . . the [G]roup [T]wo embodiments . . . where the side opening is distal to the substantially rigid portion, and we know that because the patent itself tells us.

J.A. 27097.

At an impasse after rejecting both constructions, the district court appointed an independent expert to analyze the issue and propose a construction. At the parties' recommendation, the district court appointed Andrei Iancu, former director of the United States Patent and Trademark Office, as the expert. The district court tasked Mr. Iancu with "producing a written report that proposes a construction of the term 'substantially rigid portion/segment' and explains the basis for his proposed construction—or, in the alternative, a written report that states that he finds the term to be indefinite and explains the basis for his conclusion." J.A. 27259. Teleflex urged Mr. Iancu to adopt a "split" construction, one construction for claims where the side opening is included in the substantially rigid portion, and one construction for claims where the side opening is not in the substantially rigid portion. J.A. 27299–300. Medtronic urged Mr. Iancu to find the claims indefinite. J.A. 27300.

12                VASCULAR SOLUTIONS LLC v. MEDTRONIC, INC.

Mr. Iancu rejected both parties' constructions. Instead, Mr. Iancu proposed "substantially rigid portion/segment" be construed as "the first proximal section of a multi-section guide extension catheter, that ends where there is a material drop in the overall rigidity of the guide extension catheter at or distally to the proximal end of the coaxial lumen where an interventional cardiology device is inserted." J.A. 27281. He specifically rejected Medtronic's indefiniteness arguments, finding that "a [skilled artisan] would be able to understand the boundaries and requirements of the substantially rigid segment/portion." J.A. 27331. But he also agreed with the district court's determination regarding mutual exclusivity and "shared the [district court's] skepticism at Teleflex's efforts to secure a construction that would allow it to map 'two mutually exclusive limitations' onto the same accused product." J.A. 27318.

After receiving Mr. Iancu's construction, the district court conducted another claim construction proceeding and asked the parties to submit briefs either accepting or opposing the recommendation. The district court told the parties: "I just want the expert's proposed construction to be briefed, whether it works and, you know, if it doesn't work, then I think we almost necessarily have to hold [the term is] indefinite." J.A. 27399.

Teleflex advocated that the district court adopt Mr. Iancu's recommendation. *See* J.A. 27536. And while Teleflex recognized that Mr. Iancu's construction was inconsistent with Group Two claims, Teleflex argued that Mr. Iancu's construction did not render the Group One claims indefinite because of that inconsistency. In response, Medtronic noted that the specification supported Mr. Iancu's construction for the Group One claims, but it argued that all claims should be invalidated because Mr. Iancu's construction would render the Group Two claims nonsensical. J.A. 27415.

The district court ultimately agreed with Medtronic. It again reiterated that the claims were mutually exclusive, and Teleflex's construction would result in the same device simultaneously infringing mutually exclusive claims. J.A. 9. The court ultimately concluded that all claims including the phrase "substantially rigid portion/segment" were indefinite. J.A. 20. Because all asserted claims include that term, Teleflex and Medtronic stipulated to final judgment. J.A. 27804–05.

## DISCUSSION

Teleflex argues the district court erred in its conclusion that the limitation "substantially rigid portion/segment" is indefinite. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

"Claim construction is a question of law and receives *de novo* review on appeal." *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1360 (Fed. Cir. 2022) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390–91 (1996)). "Claim indefiniteness is a legal conclusion, in implementation of 35 U.S.C. § 112." *Id.* "Indefiniteness, therefore, like claim construction, is a question of law that we review *de novo*, with the underlying factual findings reviewed for clear error." *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1228 (Fed. Cir. 2016).

"United States patents are accompanied by a presumption of validity, 35 U.S.C. § 282, and invalidity must be established by clear and convincing evidence." *Nature Simulation Sys.*, 50 F.4th at 1361 (citing *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017)).

"Claim indefiniteness is decided from the viewpoint of persons skilled in the field of the invention." *Id.* at 1360. The district court adopted the parties' agreement that a person of ordinary skill in the field would be one of the

VASCULAR SOLUTIONS LLC v. MEDTRONIC, INC.

following: "(1) a medical doctor who had completed a coronary intervention training program and had worked as an interventional cardiologist; or (2) a person with an undergraduate degree in engineering (such as mechanical or biomedical engineering) with three years' experience designing medical devices, including catheters or catheter-deployable devices."[8] J.A. 3.

Teleflex argues that the district court erred in its determination that "the boundary of the 'substantially rigid portion' must be the same for all claims." Appellants' Opening Br. 35. Rather, Teleflex argues,

> [t]he boundary of the substantially rigid portion necessarily varies according to other claim language because the claims divide up the device in different ways. In some combinations, the side opening is designated as its own segment; in others, the side opening is designated as falling in the substantially rigid portion. That does not make the claims "mutually exclusive," as the district court thought; it simply means the claims set different boundaries between the segments they define.

*Id.* at 35–36.

Medtronic, on the other hand, points to multiple problems it sees with Teleflex's construction. First, Medtronic believes Teleflex's construction of substantially rigid portion cannot be correct, since its proposed construction would transform every piece of a functioning guide extension catheter into a "substantially rigid portion." Appellees' Resp. Br. 37. Medtronic also argues that Teleflex's proposed construction "fails to answer the critical question—

---

[8]    The parties also agree that extensive experience and technical training might substitute for education, and advanced degrees might substitute for experience. J.A. 3.

how to identify the bounds of the [s]ubstantially [r]igid [p]ortion." *Id.* at 39. Finally, Medtronic implores that "[t]he inescapable impact of Teleflex's constructions remains that Teleflex can accuse any and all portions of a guide extension catheter of satisfying the [s]ubstantially [r]igid [p]ortion limitation, depending on what other limitations Teleflex needs to prove to establish infringement." *Id.* at 40.

First, we hold the district court erred when it determined the asserted claims were "mutually exclusive" and indefinite. The claims of a patent "must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014). "[The claims'] principal function, therefore, is to provide notice of the boundaries of the right to exclude and to define limits . . . . Claims define and circumscribe . . . ." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1347 (Fed. Cir. 2010). The district court determined the asserted claims were "mutually exclusive" because the Group One claims place the side opening within the substantially rigid portion, and the Group Two claims place the side opening distal to the substantially rigid portion. *See* J.A. 7. The district court's conclusion, in effect, means that (1) claims in a patent cannot vary in the way they claim the disclosed subject matter, and (2) independent claims must be totally consistent with other independent claims. Claiming is not restricted in this way.[9] The art of claiming sometimes involves drafting claims in a variety of ways to encompass the disclosed subject matter, so long as the claims themselves inform, "with reasonable certainty, those skilled in

---

[9]    We neither consider nor address how the asserted claims might be read at the infringement stage.

the art about the scope of the invention." *See Nautilus*, 572 U.S. at 901.

By finding the claims "mutually exclusive," the district court forced itself into a later conclusion of indefiniteness, which it did not have to do. We direct the district court to conduct claim construction on a claim-by-claim basis with the understanding that, at the claim construction stage, the claims are not necessarily "mutually exclusive" since each independent claim is a different ordered combination of limitations.

Second, we hold that the boundary of the "substantially rigid portion/segment" does not have to be consistent across claims. The "substantially rigid portion/segment" limitation is a functional limitation, meaning the substantially rigid portion is a portion of the catheter that is substantially rigid enough to achieve some function. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374–75 (Fed. Cir. 2014) ("[D]efining a particular claim term by its function is not improper . . . ," and "[t]here is nothing improper about defining 'datalink' as a link that conveys data."). In some claims, such as claims 13 and 18 of the '032 patent, the substantially rigid portion/segment includes the side opening. In other claims, such as claim 25 of the '776 patent, the side opening is distal to the substantially rigid portion/segment. No matter if the side opening is within or distal to the substantially rigid portion/segment, that portion/segment of the catheter must maintain the substantial rigidity to achieve some function—in this case, the function of allowing the device to be advanced within the guide catheter.

It is true that our law indicates that "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *see also Samsung Elecs. Co.,*

*Ltd. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1378 (Fed. Cir. 2019) ("Where multiple patents derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."). This decision does not diverge from our law on the matter. Rather, this decision clarifies that the term "substantially rigid portion" be construed the same way across the patents, but that construction can be a functional construction that does not specify the boundary of the "substantially rigid portion."

To the extent Medtronic argues that this type of reading might confuse a person skilled in the field as to how to measure the boundary of the substantial rigid portion, we do not find that argument availing. The claims themselves indicate to a person skilled in the field how to measure the boundary, claim-by-claim. In addition, to the extent Medtronic objects to a functional understanding of this limitation that would allow the same device to infringe claims that measure the boundary differently, we find that position premature at the claim construction stage. *See Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005) ("A determination of infringement is a two-step process. The court must first correctly construe the asserted claims, and then compare the properly construed claims to the allegedly infringing devices, systems, or methods.") (quoting *NTP, Inc. v. Research In Motion, Ltd.*, 392 F.3d 1336, 1364 (Fed. Cir. 2004)).

CONCLUSION

We have considered Medtronic's remaining arguments and find them unpersuasive. The district court, in its attempt to construe various claim terms, incorrectly determined that Teleflex's asserted claims were mutually exclusive and that the boundary of the "substantially rigid portion/segment" needed to be construed consistently across claims. We vacate and remand to the district court

with instruction that the asserted claims are not necessarily mutually exclusive, and the claim limitation "substantially rigid portion/segment" does not have to have a consistent boundary across different independent claims.

## VACATED AND REMANDED

### COSTS

No costs.